FILED

2023 Mar-28  PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KEITH ALLEN BLACK,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 4:21-cv-01555-ACA** |
| | ] | |
| **SHERIFF PHIL SIMS, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

Nickolas Keith Black ("Mr. Black") died while incarcerated as a pretrial detainee in Marshall County Jail. His father, Plaintiff Keith Allen Black ("Plaintiff Black"), represents Mr. Black's estate and brought this lawsuit against four defendants, including Sheriff Phil Sims and Chief Correctional Officer Matt Cooper. (Doc. 42 at 11, 13). Plaintiff Black asserts that Sheriff Sims and Chief Cooper were deliberately indifferent to Mr. Black's serious medical needs and that they had an unconstitutional custom or policy of such deliberate indifference. Sheriff Sims and Chief Cooper move to dismiss the claims against them. (Doc. 47).

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion to dismiss. Because Plaintiff Black has not stated a claim of any unconstitutional custom or policy, the court **WILL DISMISS** that claim against both defendants. And because Sheriff Sims is entitled to qualified immunity from the

claim of deliberate indifference, the court **WILL DISMISS** that claim against him. But because Chief Cooper is not entitled to qualified immunity from the deliberate indifference claim at this stage of the proceedings, the court **WILL DENY** the motion to dismiss that claim against him.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the second amended complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Mr. Black suffered from Wegener's Disease, a serious kidney ailment that required him to undergo a kidney transplant in February 2013. (Doc. 42 at 4 ¶¶ 20–21). He received regular treatment and medication from his nephrologist, Dr. Todd Broome, before and after the kidney transplant. (*Id.* at 4 ¶¶ 22–23). The kidney transplant left Mr. Black immunocompromised. (*Id.* at 4 ¶ 24).

Mr. Black was incarcerated as a pretrial detainee in Marshall County Jail on January 24, 2020. (*Id.* at 4 ¶ 18, 12 ¶ 69 n.4). Another inmate assaulted Mr. Black soon after he entered the jail. (Doc. 42 at 4 ¶ 25). Upon learning of the assault on his son, Plaintiff Black informed Chief Cooper, who was the Chief Correctional Officer at the jail, that Mr. Black "was a kidney transplant recipient, immunocompromised, and that physical abuse and injury to [Mr. Black's] transplanted kidney could cause

serious health problems and even death." (*Id.* at 4–5 ¶ 27). Chief Cooper responded that Mr. Black would be "treated just like every other inmate." (*Id.* at 5 ¶ 28).

In October 2020, Mr. Black left the jail with permission for a check-up from Dr. Broome. (*Id.* at 5 ¶ 31, 9 ¶ 53 n.2). Dr. Broome adjusted Mr. Black's medications and "his blood work came back as satisfactory for his condition." (Doc. 42 at 5 ¶ 31).

Late the next month, Mr. Black's parents called Dr. Broome after learning that some or all defendants had changed or attempted to change Mr. Black's medications. (*Id.* at 5 ¶ 32). Soon after, Dr. Broome called Chief Cooper to inquire about Mr. Black's health. (*Id.* at 5 ¶ 33). Chief Cooper told Dr. Broome, "[w]hat goes on here . . . is none of your business," to which Dr. Broome responded that it was "his business" as Mr. Black's treating physician for over ten years. (*Id.* at 5 ¶¶ 34–35). Dr. Broome then told Chief Cooper "in no uncertain terms that changing [Mr. Black]'s medications must be carefully considered." (Doc. 42 at 6 ¶ 36). Dr. Broome requested that he be allowed to review Mr. Black's medical records from the jail, but Chief Cooper refused, telling Dr. Broome that he would need a subpoena to view Mr. Black's records. (*Id.* at 5 ¶¶ 36–37).

Mr. Black's health began to deteriorate significantly in late January 2021. (*Id.* at 6 ¶ 39). He had "respiratory issues, weakness, loss of appetite, and loss of energy." (*Id.*). Other inmates told "each of the defendants" and Mr. Black's parents (doc. 42 at 6 ¶ 42), that he "could not stand, could not eat, would urinate on himself, and was

otherwise visibly very ill" (*id.* at 6 ¶ 41). Mr. Black's parents called the jail repeatedly to express concerns about his health. (*Id.* at 6–7 ¶¶ 40, 43–44). Plaintiff Black called Chief Cooper several times, leaving messages "that he was gravely concerned about [Mr. Black's] health, and further request[ing] that [Chief] Cooper take proper steps to ensure [Mr. Black] received proper healthcare." (*Id.* at 6–7 ¶ 43). Chief Cooper took no action in response to those calls. (*Id.*). Ms. Black called "each of the defendants" (doc. 42 at 7 ¶ 44), to express her concerns about her son's health (*id.* at 6 ¶ 40). Each time, she was told that he was "fine." (*Id.*).

At some point—the precise date is unclear—Mr. Black was placed on a "sick-call list of inmates," which "clearly indicated that [Mr. Black] was seriously ill." (Doc. 42 at 7 ¶ 45). Sheriff Sims and Chief Cooper both knew that Mr. Black was on the sick-call list, though there is no allegation that they knew exactly what the sick-call list said about Mr. Black's condition. (*See id.*).

Jail medical records indicate that Mr. Black was visibly ill by at least January 29, 2021. (*Id.* at 7 ¶ 46). On that day, Mr. Black's mother called Defendant Lisa Rigsby, the medical director and a nurse working at the jail under a contract her employer, Defendant Southern Health Partners, Inc., had with the jail to provide medical care for inmates there. (*Id.* at 2–3 ¶¶ 12–13, 7 ¶ 46). Ms. Black reported that Mr. Black "was feeling sick, his urine was dark (a symptom of special concern for a

kidney patient), and his energy level was low." (Doc. 42 at 7 ¶ 46). Nurse Rigsby assessed Mr. Black and he was returned to his cell. (*Id.*).

On January 31, 2021, Nurse Rigsby noted that Mr. Black continued "to have some symptoms." (*Id.* at 7 ¶ 47). She observed visibly increased hand tremors and ordered that the jail provide Mr. Black double portions of food because he was not eating and losing weight. (*Id.*). Nine days later, on February 9, 2021, Nurse Rigsby noted that Mr. Black "ha[d] been shaking from being cold" and ordered that the jail provide him two additional blankets. (Doc. 42 at 7 ¶ 48).

Four days after that, on February 13, 2021, Mr. Black's mother called Nurse Rigsby "after receiving alarming messages from another inmate that [Mr. Black] was weak, not eating, grunting, and urinating on himself." (*Id.* at 8 ¶ 49). Nurse Rigsby informed Mr. Black's mother that HIPAA prevented her from discussing "anything about the patient," but that Mr. Black was "fine, but just depressed." (*Id.*). Later that day, a urine specimen was collected from Mr. Black. (*Id.* at 8 ¶ 50).

At 7:30 a.m. the next morning, Nurse Rigsby saw that Mr. Black was pale and panting; was complaining of severe fatigue, shortness of breath, nausea, and vomiting; could not stand to take medications; and had a pulse rate of 120 and an oxygen saturation level of 88%. (Doc. 42 at 8 ¶ 51). There were six untouched trays of food inside Mr. Black's cell. (*Id.*). An hour later, Nurse Rigsby reported her findings to Dr. Hughes, the jail doctor employed by Southern Health Partners. (*Id.*

at 8 ¶ 52). Dr. Hughes ordered Nurse Rigsby to have Mr. Black transported "directly" to Huntsville Hospital, but he was not transported there until the next day. (*Id.*).

Huntsville Hospital admitted Mr. Black at 10:00 a.m. on February 15, 2021 in a "confused and altered" mental state. (Doc. 42 at 10 ¶ 58). The hospital assessed the following conditions: acute kidney injury likely due to sepsis; renal transplant recipient; hyperkalemia; hypoxemic respiratory failure; pneumonia in an immunocompromised patient; septic shock; malnutrition; D-dimer blood test above reference range; anemia; thrombocytopenia; elevated bilirubin; and large arteriovenous fistula. (*Id.*). Mr. Black died at the hospital a week later. (*Id.* at 11 ¶ 61).

Plaintiff Black asserts two federal civil rights claims and one state law wrongful death claim. (*Id.* at 11, 13–14). Count One asserts that all defendants— Sheriff Sims, Chief Cooper, Nurse Rigsby, and Southern Health—were deliberately indifferent to Mr. Black's serious medical needs in violation of the Fourteenth Amendment by denying him proper medical care for his kidney disease. (Doc. 42 at 11–13). Count Two asserts that Sheriff Sims and Chief Cooper maintained and enforced an unconstitutional custom or policy of deliberate indifference to detainees' serious medical needs. (*Id.* at 13–14). And Count Three asserts that Nurse Rigsby and Southern Health committed medical negligence that caused Mr. Black's

wrongful death. (*Id.* at 14–15). Nurse Rigsby and Southern Health have answered the second amended complaint (docs. 45, 46), but Sheriff Sims and Chief Cooper move, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the two claims against them (doc. 47).

## II.   DISCUSSION

"To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In deciding whether a plaintiff has stated a claim, the court follows a two-step approach, "first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

Sheriff Sims and Chief Cooper contend that Plaintiff Black failed to state a plausible claim for relief against them because his allegations do not overcome their

entitlement to qualified immunity. (Doc. 48 at 14–37). Qualified immunity protects government officials performing discretionary functions from claims brought against them in their individual capacities "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (quotation marks and alteration omitted).

An officer asserting the qualified immunity defense bears the initial burden of showing that he was performing a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004). If he can do that, the burden shifts to the plaintiff to "show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* at 1264.

Sheriff Sims and Chief Cooper contend that they were performing their discretionary functions because their duties include ensuring the provision of medical care to inmates in the county jail. (Doc. 48 at 11–12). Plaintiff Black responds that Sheriff Sims and Chief Cooper were not performing a discretionary

function because they lack the discretion to withhold necessary medical care. (Doc. 50 at 8–9).

Sheriff Sims and Chief Cooper have carried their initial burden. Contrary to Plaintiff Black's argument, an official does not act within the scope of his discretionary authority only when he performs his duties correctly. Instead, the inquiry is "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman*, 370 F.3d at 1265. The court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266. Viewed in that light, it is clear that Sheriff Sims and Chief Cooper were performing discretionary functions with respect to the provision (or withholding) of medical care to Mr. Black.

The burden therefore shifts to Plaintiff Black to establish that the facts he alleges "make out a violation of a constitutional right" and that "the right at issue was clearly established at the time of defendant's alleged misconduct." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013) (quotation marks omitted). The court may address those questions in either order. *Id.*

In this case, both claims against both defendants revolve around Mr. Black's Fourteenth Amendment right, as a pretrial detainee, to adequate medical care. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). Although the right arises out of the Fourteenth Amendment, the court may also look to cases addressing convicted prisoners' Eighth Amendment right to adequate medical care. *See id*.

The government has an "obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Accordingly, an official's "deliberate indifference to serious medical needs of prisoners" violates a pretrial detainee's Fourteenth Amendment right to due process. *Id.* at 104; *Mann*, 588 F.3d at 1306. To state a claim of deliberate indifference to serious medical needs, a plaintiff must allege "an objectively serious medical need" and "that the prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Deliberate indifference requires a showing of "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Id.* The subjective knowledge element requires that "the defendant be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Nam*

*Dang by & through Vina Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1280 (11th Cir. 2017).

There are three ways of showing that a right was clearly established at the time of the alleged violation. First, the plaintiff can point "to a materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). Second, the plaintiff can persuade the court "that a broader, clearly established principle should control the novel facts of the case." *Id.* (quotation marks omitted). Or third, the plaintiff can convince the court "that the case is one of those rare ones that fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary." *Id.* (quotation marks and alteration omitted). Regardless of the method, the plaintiff must establish that "the state of the law at the time of the incident gave the officer 'fair warning' that his conduct was unlawful." *Id.* at 921 (quotation marks and alteration omitted).

1.    Count One: Deliberate Indifference to Serious Medical Needs

Plaintiff Black alleges that Sheriff Sims and Chief Cooper violated Mr. Black's clearly established rights and caused his death by repeatedly denying him proper medical care when they knew of his urgent medical needs and the substantial risks if left untreated. (Doc. 42 at 11–12 ¶¶ 63–74). Sheriff Sims and Chief Cooper contend that they are entitled to qualified immunity because Plaintiff

Black failed to adequately allege that they were aware of Mr. Sims' condition or deterioration in late January 2021. (Doc. 48 at 18–28). Because "[e]ach individual Defendant must be judged separately and on the basis of what that person knows," *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008), the court will address the allegations against each defendant separately.

### a.  Sheriff Sims

There can be no dispute that Mr. Black had a serious medical need; indeed, the only element of this claim in dispute is Sheriff Sims' knowledge of Mr. Black's serious medical need. (*See* doc. 48 at 17–22; doc. 50 at 4–6). The allegations specific to Sheriff Sims's knowledge are that in late January 2021, as Mr. Black's health was deteriorating, other inmates told "each of the defendants" (doc. 42 at 6 ¶ 42) that Mr. Black "could not stand, could not eat, would urinate on himself, and was otherwise visibly very ill" (*id.* at 6 ¶ 41). Mr. Black's mother called "each of the defendants" (*id.* at 7 ¶ 44), to express her concerns about her son's health (*id.* at 6 ¶ 40). And Sheriff Sims knew that Mr. Black had been placed on a "sick-call list of inmates." (*Id.* at 7 ¶ 45).

Plaintiff Black contends that these allegations suffice to establish that Sheriff Sims was aware of Mr. Black's medical condition and need for medical care as well as the lack of care he was receiving. (Doc. 50 at 7). The court agrees that these facts suffice, at the pleading stage, to establish that Sheriff Sims was aware of Mr. Black's

medical condition and need for medical care but disagrees that they suffice to show Sheriff Sims' knowledge that Mr. Black was not receiving appropriate care. To the contrary, Plaintiff Black has alleged that Sheriff Sims knew Mr. Black had been placed on the sick-call list (*id.* at 7 ¶ 45); the only reasonable inference of that factual allegation is that Sheriff Sims believed Mr. Black was receiving medical attention from medical staff at the jail. Accordingly, Plaintiff Black has not carried his burden of pleading facts showing a constitutional violation.

Likewise, Plaintiff Black has not pleaded a clearly established constitutional violation. He relies on *Harris v. Coweta County*, 21 F.3d 388 (11th Cir. 1994). (Doc. 50 at 15–16). But in *Harris*, a prison doctor who saw the plaintiff called the sheriff personally decrying the delay in treatment and explaining the need for "immediate medical attention," specifically, a nerve conduction study. 21 F.3d at 391, 394. Instead of ensuring that the study was performed, the sheriff attempted to have custody of the plaintiff transferred from the county system to the state system, but that attempt was unsuccessful. *Id.* at 391–92. Despite the sheriff's personal knowledge that the plaintiff could not be transferred to state custody to receive his medical care, the sheriff did nothing to ensure that the study was performed until six weeks after a physician initially recommended it. *Id.* at 394. The Eleventh Circuit held that these facts overcame the sheriff's entitlement to qualified immunity. *Id.*

The facts presented here are too different from *Harris* for *Harris* to have put Sheriff Sims on notice of the need for him to take action about Mr. Black's medical need. Although Sheriff Sims knew of Mr. Black's condition, there are simply no facts supporting a reasonable inference that Sheriff Sims knew Mr. Black was not receiving appropriate care. Accordingly, Sheriff Sims is entitled to qualified immunity from Count One.

       *b. Chief Cooper*

The facts specific to Chief Cooper are that soon after Mr. Black was incarcerated in January 2020, Plaintiff Black specifically told Chief Cooper about Mr. Black's medical history of having a kidney transplant, as well as his immunocompromised status. (Doc. 42 at 4 ¶ 18, 4–5 ¶ 25–27, 12 ¶ 69 n.4). In November 2020, after learning of a change or attempted change to Mr. Black's medications, Mr. Black's nephrologist spoke with Chief Cooper about the need to take care about any such change. (*Id.* at 5–6 ¶¶ 32–37). Two months later, when Mr. Black's health began to deteriorate, inmates told Chief Cooper about Mr. Black's inability to stand or eat, his incontinence, and his visible illness. (*Id.* at 6 ¶ 39–42). Plaintiff Black left multiple messages for Chief Cooper asking him to "take proper steps to ensure [Mr. Black] received proper healthcare." (*Id.* at 6–7 ¶ 43). But, although Chief Cooper knew that Mr. Black was on the sick-call list, he did nothing to ensure that Mr. Black was receiving appropriate care. (*Id.* 7 ¶ 43, 7

¶ 45). Indeed, Nurse Rigsby did not evaluate Mr. Black until his mother called her directly. (*Id.* at 7 ¶ 46).

At the pleading stage, these allegations suffice to show both that Chief Cooper was aware of Mr. Black's serious medical need and the rapid decline in his health and to demonstrate Chief Cooper's disregard of the risk to Mr. Black. *See Brown*, 387 F.3d at 1351. Unlike Sheriff Sims, Chief Cooper was explicitly informed of precise details about Mr. Black's medical history and fragility, the need to take care when changing Mr. Black's medications, and his deterioration. Yet, accepting as true the allegations made against him, Chief Cooper "failed or refused to do anything" (doc. 42 at 7 ¶ 43), and it took Mr. Black's mother reaching out directly to medical staff to ensure that he received medical attention (*id.* at 7 ¶ 46). This is enough to state a claim for deliberate indifference to serious medical needs at the pleading stage.

The allegations also suffice to show a violation of a clearly established right. Plaintiff Black has not presented any cases with materially similar facts but argues that either a broader, clearly established principle controls, or that the conduct so obviously violates the Constitution that a previous decision was unnecessary. (Doc. 50 at 17–20); *see Powell*, 25 F.4th at 920. The court agrees that the broad principle controls in this case.

The Supreme Court in *Estelle* established, as a general matter, that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." 429 U.S. at 104 (quotation marks omitted). In 2010, the Eleventh Circuit addressed a claim that two jailers were deliberately indifferent to the serious medical needs of an alcoholic pretrial detainee. *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1230 (11th Cir. 2010). The jailers personally witnessed the detainee experiencing hallucinations and displaying slurred speech, incoherence, and difficulty walking. *Id.* Inmates also told the jailers that the detainee was saying strange things and having trouble keeping his balance. *Id.* The jailers told a police officer about the detainee's behavior, and the police officer told them he would relay that message to the police chief to make a decision about medical care. *Id.* But the detainee never received care and died four days later. *Harper*, 592 F.3d at 1230. The Eleventh Circuit held that these facts sufficiently alleged that the two jailers had violated the detainee's constitutional rights because, although they told the police officer about the situation, they took no "steps to actually secure immediate medical attention for [the detainee], whose need for prompt treatment appeared dire." *Id.* at 1235.

Although the facts in *Harper* may be somewhat distinguishable from the facts alleged in this case, the court finds that they are similar enough to put a reasonable officer on notice of the need to take action when faced with the type of specific

16

information Chief Cooper had received about Mr. Black's medical history, ongoing medical condition, and deterioration. *See Powell*, 25 F.4th at 920 (explaining that one method of showing a clearly established violation of constitutional rights is to point to "a principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent"). Plaintiff Black has carried his burden, at the pleading stage, of alleging facts sufficient to show that Chief Cooper violated Mr. Black's clearly established right. As a result, the court **WILL DENY** Chief Cooper's motion to dismiss Count One as asserted against him.

2.    Count Two: Unconstitutional Custom or Policy

The second federal claim asserts that Sheriff Sims and Chief Cooper had an unconstitutional custom or policy of deliberate indifference to serious medical needs. (Doc. 42 at 13–14). Notably, Count Two expressly discusses only Sheriff Sims' actions and names Chief Cooper for the first time in the final paragraph of the count. (*Id.*). Moreover, although Defendants argue that Chief Cooper appears to have been included in this count by mistake (doc. 48 at 28 n.1), Plaintiff Black's response brief addresses only whether Sheriff Sims had an unconstitutional custom or policy (doc. 50 at 9–11). Accordingly, the court finds that, even if Plaintiff Black meant to assert Count Two against Chief Cooper, he has abandoned that claim. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to

adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims.") (quotation marks omitted). The court therefore **WILL GRANT** the motion to dismiss Count Two against Chief Cooper.

With respect to Sheriff Sims, Plaintiff Black asserts that he inadequately staffed the jail; inadequately supervised, trained, controlled, assigned, and disciplined employees; maintained nonexistent or inadequate procedures to care for inmates with serious medical conditions; and withheld medical care to inmates. (Doc. 42 at 13–14 ¶ 77). Sheriff Sims contends that he is entitled to qualified immunity because the allegations are entirely conclusory. (Doc. 48 at 28–35).

To allege the existence of an unconstitutional policy or custom (or lack of a policy or custom), the plaintiff must "must point to multiple incidents or multiple reports of prior misconduct by a particular employee. A single incident of a constitutional violation is insufficient to prove a policy or custom." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019) (citations and quotation marks omitted). Here, although Plaintiff Black has alleged specific facts about Mr. Black's treatment, he has not alleged any facts showing the existence of any policies or customs relating to detainees' medical treatment. (*See generally* doc. 42). The court therefore agrees that Sheriff Sims is entitled to qualified immunity and **WILL GRANT** the motion to dismiss Count Two against Sheriff Sims on that basis.

### III.   CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** Sheriff Sims and Chief Cooper's motion to dismiss the claims against them. The court **WILL DISMISS** Count One and Count Two as asserted against Sheriff Sims. The court **WILL DISMISS** Count Two as asserted against Chief Cooper. But the court **DENIES** the motion to dismiss Count One against Chief Cooper.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this March 28, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE