IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Middle Division

| | | |
|---|---|---|
| **KEITH ALLEN BLACK, as the personal representative of the Estate of Nickolas Keith Black,** | * * * * | |
| **Plaintiff,** | * * | CIVIL ACTION NUMBER: |
| v. | * * | <u>4:21-cv-01555-ACA</u> |
| **SOUTHERN HEALTH PARTNERS, INC.; LISA RIGSBY; and JEFFREY M. GRAY, AS ADMINISTRATOR AD LITEM OF THE ESTATE OF DORAN MATTHEW COOPER;** | * * * | |
| **Defendants.** | | |

## THIRD AMENDED COMPLAINT

1. This case is about the cruel yet entirely preventable death of Nickolas Keith Black ("Nickolas"), who was in the custody and care of the Marshall County Jail at the time of his death on February 21, 2021.

2. Jail personnel, including the sheriff, deputies, and jail medical staff all exhibited callous and deliberate indifference to Nickolas's obvious medical needs.

3. Nickolas was a 23-year-old kidney transplant recipient, immunocompromised, and required to take a myriad of medications to treat his medical condition. His health began to deteriorate in late January 2021.

4. Despite knowing of Nickolas's compromised health condition, the defendants failed to provide him with adequate treatment and care.

5. Nickolas's health deteriorated so badly that he was finally transported by ambulance to Huntsville Hospital on February 15, 2021.

6. Upon his arrival at the hospital, Nickolas was in critical condition, barely responsive, and suffering from sepsis, dehydration, malnutrition, kidney failure, and pneumonia.

7. Despite heroic efforts by Nickolas's treating physicians and the staff at Huntsville Hospital, Nickolas died on February 21, 2021.

8. As such, the plaintiff brings this action pursuant to 42 U.S.C. § 1983, et seq., and state laws to recover civil damages arising from the violations of state law, federal law, and the Fourteenth Amendment of the United States Constitution which resulted in Nickolas's painful and unnecessary death.

## STATEMENT OF THE PARTIES

9. Plaintiff Keith Allen Black is of legal age and a citizen and resident of Marshall County, Alabama. He is the duly appointed personal representative of the Estate of Nickolas Keith Black, deceased.

10. Defendant Jeffrey M. Gray, as the administrator ad litem of the Estate of Doran M. Cooper, is the court-appointed administrator of the estate of former defendant Matt Cooper, now deceased ("Deputy Cooper"). Deputy Cooper was the Chief Correctional Officer at the Marshall County Jail. In this capacity, Deputy Cooper was responsible for the supervision of jailers, deputies, and medical staff at the Marshall County Jail. He is named in his individual capacity only.

11. Defendant Southern Health Partners, Inc. ("Southern Health") is a private for-profit corporation that is under a contractual obligation to provide medical care for inmates at the Marshall County Jail. Southern Health is organized under Delaware law with its principal place of business located at 2030 Hamilton Place Boulevard,

Chattanooga, Hamilton County, Tennessee 37421. Southern Health describes itself as "a leading provider of medical, dental, and mental health services to inmates in county and city jail facilities." Southern Health represents that it operates in over 250 correctional facilities in 14 states, including Alabama.[1]

12. Defendant Lisa Rigsby ("Rigsby") is a nurse who is the principal of Southern Health and was at all relevant times the director of the medical program for inmates at the Marshall County Jail. She is believed to reside in or near Marshall County, Alabama, within the jurisdiction of this Court.

13. All of the defendants are persons within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

14. This action is filed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress the injuries and wrongful death suffered by Nickolas Black at the hands of the defendants.

15. This court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1367(a).

16. Venue is proper in this matter pursuant to 28 U.S.C. § 1391(b)(2) because the incident occurred in Marshall County, Alabama, which is located in the Middle Division of the United States District Court for the Northern District of Alabama.

## STATEMENT OF FACTS

17. On or about January 24, 2020, Nickolas Black, age 22, was arrested in Marshall County, Alabama, and booked into the Marshall County Jail.

---

[1] See https://www.southernhealthpartners.com/why-choose-us (retrieved October 14, 2021).

18. Nickolas was incarcerated in the Marshall County Jail from the time of his arrest in January 2020 until his transporation to Huntsville Hospital on February 15, 2021, where he died on February 21, 2021.

19. From his early childhood, Nickolas was diagnosed with Wegener's Disease, a serious kidney ailment, as well as significant mental and cognitive deficits and learning disabilities.

20. Due to Wegener's Disease, Nickolas had to undergo a kidney transplant in February 2013.

21. Before and after the kidney transplant, Nickolas was treated by Dr. Todd Broome, a nephrologist in Huntsville, Alabama.

22. Nickolas was required to take a myriad of daily medications and be checked regularly by Dr. Broome.

23. Nickolas was immunocompromised due to his kidney transplant and other medical conditions.

24. Shortly after his incarceration in January 2020, Nickolas was assaulted and beaten by another inmate.

25. Plaintiff Keith Black was informed of the assault and called the Marshall County Jail.

26. Plaintiff Black spoke to Deputy Cooper, Chief Correctional Officer of the Marshall County Jail, at which time Black informed Deputy Cooper that Nickolas was a kidney transplant recipient, immunocompromised, and that physical abuse and injury to Nickolas's transplanted kidney could cause serious health problems and even death.

27. Deputy Cooper responded that Nickolas would be "treated just like every

other inmate" in the Marshall County Jail.

28. Nickolas was eventually moved to the "protective custody" portion of the Marshall County Jail.

29. At some time during Nickolas's incarceration, the portion of the jail underwent remodeling and/or other construction; during this time, however, the inmates in "protective custody" were not moved to another portion of the jail and thus were subject to dust and debris from the remodeling/construction.

30. Nickolas received a check-up from his nephrologist, Dr. Broome, in October 2020.  His medications were adjusted, and his blood work came back as satisfactory for his condition.

31. In late November 2020, after Nickolas's parents found out that the Marshall County Jail (acting through Deputy Cooper and/or defendants Southern Health and/or Rigsby) had changed, or had attempted to change, some of Nickolas's medications, they contacted Dr. Broome.

32. In early December 2020, Dr. Broome called Deputy Cooper to inquire about Nickolas's mental and physical health.

33. Deputy Cooper informed Dr. Broome, "What goes on here [the Marshall County Jail] is none of your business."

34. Dr. Broome challenged Deputy Cooper and said as Nickolas's treating physician for over ten years, it was "his business."

35. Dr. Broome told Deputy Cooper in no uncertain terms that changing Nickolas's medications must be carefully considered.  Dr. Broome further requested that he be allowed to review Nickolas's medication and treatment records.

36. Deputy Cooper refused to provide the records or allow Dr. Broome to review them, and further stated that Dr. Broome would have to subpoena the records before he could see them.

37. After the conversation with Deputy Cooper, Dr. Broome had serious concerns about Nickolas's health and the treatment provided at the Marshall County Jail to such an extent that he contacted Nickolas's criminal attorney regarding his concerns.

38. In late January 2021, Nickolas's health began to deteriorate markedly. He had respiratory issues, weakness, loss of appetite, and loss of energy.

39. Nickolas's parents were able to communicate with Nickolas via text and understood that he was ill. Mrs. Black called the Marshall County Jail on several occasions to express concern about Nickolas's health and was informed each time that Nickolas was "fine."

40. By late January 2021, however, other inmates had noticed a significant decline in Nickolas's health. He could not stand, could not eat, would urinate on himself, and was otherwise visibly very ill.

41. Those inmates then informed each of the defendants and Nickolas's parents of Nickolas's deteriorating condition.

42. This led Plaintiff Black to make several calls to Deputy Cooper. Plaintiff Black left messages informing Deputy Cooper that he was gravely concerned about Nickolas's health, and further requested that Deputy Cooper take proper steps to ensure Nickolas received proper healthcare. Deputy Cooper failed or refused to do anything.

43. Mrs. Black also made multiple calls to the Marshall County Jail including each of the defendants in which she expressed serious concerns about Nickolas's health.

44. Nickolas was placed on a sick-call list of inmates, of which Deputy Cooper had knowledge. The sick-call list clearly indicated that Nickolas was seriously ill, yet Deputy Cooper acted with deliberate indifference by failing or refusing to obtain proper medical treatment for Nickolas's condition until it deteriorated to the point of no return.

45. Jail medical records indicate that at least by January, 2021, Nickolas was visibly ill. Mrs. Black, after hearing from Nickolas, called the jail as an advocate for her son. She reported to defendant Rigsby, an employee or contractor of defendant Southern Health, that Nickolas was feeling sick, his urine was dark (a symptom of special concern for a kidney patient), and his energy level was low. Nickolas was assessed by defendant Rigsby and was returned to his cell.

46. Defendant Southern Health's next encounter with Nickolas occurred two days later, on January 31, 2021. Defendant Rigsby noted that Nickolas continued "to have some symptoms today." She observed visibly increased hand tremors. Because Nickolas was not eating and losing weight, she ordered that he be provided double portions of food. No further examination, testing, or treatment was noted.

47. Despite these symptoms, defendant Southern Health did not have any interaction with Nickolas for nine days, until February 9, 2021. Defendant Rigsby noted that Nickolas "has been shaking from being cold." She ordered that Nickolas be given two additional blankets. No further examination, testing, or treatment was noted.

48. Four days later, on or about February 13, 2021, Mrs. Black called the jail after receiving alarming messages from another inmate that Nickolas was weak, not eating, grunting, and urinating on himself. Defendant Southern Health's nurse, believed to have been defendant Rigsby, informed Mrs. Black that "due to HIPPA [sic], [t]his nurse

7

could not discuss anything about the patient with her." In the same or another telephone conversation around this time, defendant Rigsby told Mrs. Black that Nickolas was "fine, but just depressed."

49. Later that day, Nickolas was taken to a medical isolation unit in the jail ("Iso Med 1") where a urine specimen was obtained.

50. On the morning of February 14, 2021, at 7:30 a.m., defendant Southern Health's nurse, defendant Rigsby, observed that Nickolas was "pale," complaining of "severe fatigue," shortness of breath, and nausea and vomiting. He exhibited weight loss and was observed to be panting. He was unable to stand to take medications. He exhibited a concerning pulse rate (120) to oxygen saturation level (88%). Six "untouched" trays of food were observed in his cell.

51. Later that morning, at 8:36 a.m., defendant Rigsby reported her findings by telephone to defendant Southern Health's jail doctor, Dr. Hughes. He ordered defendant Rigsby to have Nickolas transported "directly to Huntsville Hospital." Inexplicably, however, Nickolas was not transported to Huntsville Hospital until the following day, whereupon he was admitted at approximately 10:00 a.m.

52. Incredibly, despite Nickolas's unique health history (characterized in part by a long-standing struggle with Wegener's disease, which led to him to be a kidney-transplant recipient and a significantly immunocompromised person) he never was seen or treated by defendant Southern Health Partners' medical doctor during his 13 months in the Marshall County Jail.[2]

53. Furthermore, Nickolas was never seen or treated in the jail by a medical

---

[2] Nickolas was allowed to leave the jail in October 2020 for appointments with nephrologists.

doctor provided by defendant Southern Health Partners or otherwise during the period of over two weeks in late January and early February 2021 when his condition visibly deteriorated.  The deterioration was noticeable enough to arouse concern among his fellow inmates, who reported the condition to Nickolas's parents and also the jail staff, but was ignored by either willful blindness or callous disregard by the defendants.

54. This is not unusual for defendant Southern Health.  A search of federal court records reveals that Southern Health has been named as a defendant in over 90 lawsuits filed in either the Norther District or Middle District of Alabama.  While many of these suits were inmates' pro bono complaint that were summarily dismissed, a few bear striking similarities to the conduct in this case.

55. For example, in Swan v. Southern Health Partners, 388 F.3d 834 (11th Cir. 2004) (dismissal reversed on appeal), the inmate repeatedly reported to Southern Health's employees at the Blount County jail that she had not urinated in several days. Id. at 835.  After several days, Southern Health's staff allowed a urine test which showed an infection; however, the inmate still was not treated that day.  Id.  The following day, she was allowed to go to the local emergency room.  She died 16 days later of acute renal failure.  Id.

56. More recently, in Archie v. Covington County, No. 2:19-cv-508-MHT (M.D. Ala. March 29, 2021) (motion to dismiss denied), the inmate was incarcerated for unpaid child support.  Id. at 5.  She had a medical history of high blood pressure and hypertension.  Id. at 5-6.  In the weeks leading up to her death, the inmate "continually requested medical attention because she was suffering chest pains and shortness of breath."  Id. at 6.  She was checked and found to have "unusually high" blood pressure.

Id. Over a period of a few weeks, she was only given aspirin; she was not taken to a hospital or administered any diagnostic testing. Id. The plaintiff alleged that denial of medical care was "a routine practice" at Covington County Jail. Id. Defendant Southern Health's doctor came to the jail on an irregular basis, sometimes only once a month, and never saw this inmate. Id. at 7. After a few weeks with no treatment for her symptoms, the inmate died in her cell. Id. at 8.

57. Nickolas was admitted to Huntsville Hospital on February 15, 2021, in a "confused and altered" mental state. He was assessed as follows: (a) acute kidney injury likely due to sepsis; (b) renal transplant recipient; (c) hyperkalemia; (d) hypoxemic respiratory failure; (e) pneumonia in an immunocompromised patient; (f) septic shock; (g) malnutrition; (h) D-dimer blood test above reference range; (i) anemia; (j) thrombocytopenia; (k) elevated bilirubin; and (l) large AVF (arteriovenous fistula).[3] The most serious of these conditions could not have occurred overnight and were the result of each defendant's conscious and callous disregard of Nickolas's symptoms and well-being.

58. Numerous persons at the jail, including each of the above-named defendants, were aware of Nickolas's terrible condition and knew he was even more at risk due to his immunocompromised condition and the kidney transplant issues.

59. Like the decedents in Swan and Archie, Nickolas received no meaningful treatment at the Marshall County Jail; disregarding his grave condition, each of the defendants just watched him deteriorate..

60. Despite the best efforts of the doctors and staff at Huntsville Hospital,

---

[3] Upon admission, Nickolas was tested for COVID-19 and had negative SARS-COV2 antigen and PCR tests.

Nickolas succumbed to the above-described medical conditions and died on February 21, 2021.

## COUNT ONE

### DELIBERATE INDIFFERENCE TO A SUBSTANIAL RISK OF HARM TO HEALTH AND SAFETY
### (42 U.S.C. § 1983 AND FOURTEENTH AMENDMENT)

61. The plaintiff realleges paragraphs 1 through 60 of the complaint as if set out here in full.

62. As described above, the defendants repeatedly denied Nickolas proper medical care in repeated violation of his constitutional rights.

63. All defendants were informed by Nickolas and other inmates that he had an urgent medical need and required medical treatment.

64. All defendants knew there was a substantial risk to Nickolas's health if he went untreated, but repeatedly refused to treat him.

65. As a result of the repeated denial of proper medical care, Nickolas spent the final weeks of his life unnecessarily suffering in the Marshall County Jail.

66. The denial of medical treatment exacerbated Nickolas's declining condition to the point where his life was placed in jeopardy.

67. Each defendant, by ignoring Nickolas in this situation and by failing to provide proper medical attention, acted with deliberate indifference to Nickolas's serious health condition and his significant medical needs.

68. The defendants by their deliberate indifference in failing to provide medical care to treat Nickolas' serious health condition, the conduct thereof constitutes cruel and unusual punishment in violation of the Due Process Clause of the Fourteenth

Amendment.[4]

69. Each defendant was deliberately indifferent to Nickolas's serious medical needs. A reasonable jail correctional or medical staff would comprehend that by denying medical care, Nickolas was exposed to undue suffering or threat of tangible injury which, in the end, proved to be fatal.

70. Each defendant intentionally denied Nickolas proper medical care by failing to adequately treat or transfer him for proper care, causing him to unduly suffer for weeks before succumbing to pneumonia, sepsis, and kidney failure.

71. Had the defendants provided proper medical care, instead of acting with deliberate indifference to Nickolas's obvious and serious health needs, he would not have died.

72. Nickolas's death was easily avoidable.

73. Each defendants' acts and omissions as previously described herein violated Nickolas' constitutional rights guaranteed under the Fourteenth Amendment which ultimately led to Nickolas's untimely and unnecessary death.

74. Accordingly, pursuant to 42 U.S.C. § 1983, plaintiff Keith Allen Black, as personal representative of the Estate of Nickolas Keith Black, demands judgment against the defendants in such an amount of compensatory and punitive damages as a jury may award, an additional award of attorneys' fees, and the costs of this action.

## COUNT TWO

## WRONGFUL DEATH DUE TO MEDICAL NEGLIGENCE

---

[4] Because Nickolas at all times was a pretrial detainee, his claims fall under the Fourteenth Amendment; if he had been a convicted inmate, his claims would have fallen under the Eighth Amendment of the Constitution.

75. The plaintiff realleges paragraphs 1 through 60 of the complaint as if set out here in full.

76. Defendant Southern Health and defendant Rigsby owed a duty to Nickolas to meet the standard of care for medical treatment of jail inmates.

77. This standard of care required, among other things, appropriate treatment of Nickolas's preexisting health conditions, appropriate treatment of Nickolas's pneumonia and other conditions which developed while in the jail, appropriate recognition and monitoring of Nickolas' deteriorating health, and timely referral of Nickolas for specialized medical treatment outside the jail.

78. Furthermore, defendant Southern Health owed a duty to Nickolas to make sure that its healthcare providers were trained adequately regarding the proper care of inmates, and that adequate policies and procedures were in place regarding the proper care of inmates.

79. Defendants Southern Health and Rigsby negligently and/or wantonly violated this standard of care with the foreseeable consequence that Nickolas was caused to endure unnecessary pain, suffering, and, ultimately, death.

80. Because defendant Rigsby was acting within the scope of her employment, defendant Southern Health is liable for her negligence and/or wantonness.

81. Accordingly, plaintiff Keith Allen Black, as personal representative of the Estate of Nickolas Keith Black, demands judgment against defendant Southern Health and defendant Rigsby in such an amount of compensatory and punitive damages as a jury may award, and the costs of this action.

Submitted June 29, 2023.

/s/ Archie I. Grubb, II
ARCHIE I. GRUBB, II
KENNETH S. NUGENT, P.C.
Attorneys for Plaintiff
1234 First Avenue, Suite 200
Columbus, GA 31901
Tel: (706) 223-5734
Fax: (706) 223-5747
agrubb@attorneykennugent.com


/s/ James T. Sasser
JAMES T. SASSER
Attorney for Plaintiff
270 Doug Baker Boulevard
Suite 700, PMB 353
Birmingham, AL 35242-8300
Tel: (256) 390-1050
Fax: (256) 985-2402
jtsasserlaw@gmail.com

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

/s/ Archie I. Grubb, II

**CERTIFICATE OF SERVICE**

I certify on this day, June <u>29</u>, 2023, I electronically filed the foregoing using the CM/ECF system, which was then served upon all counsel listed below by CM/ECF and/or First Class U.S. Mail as follows:

Constance Caldwell Walker
WEBB MCNEIL WALKER P.C.
P.O. Box 240909
Montgomery, AL 36214
cwalker@wmwfirm.com

Daniel F. Beasley
Karen A. Lynn
LANIER FORD SHAVER & PAYNE, P.C.
2101 West Clinton Avenue, Suite 102
Huntsville, AL 35805
dfb@lanierford.com
kal@lanierford.com

                                                              */s/ Archie I. Grubb, II*